Good morning, your honors. May it please the court, my name is Teresa Lee, student counsel for Ian Cormier. I'd like to reserve two minutes for rebuttal. Okay, now the clock counts down and we'll try to help you keep track, but you watch also. But also, I mean, no matter what your teachers have taught you about, you have to reserve the time. You also have to observe what a softy I am, that when people use up all their time, I still give them a minute. Okay, but don't count on that with other judges. They're real mean sometimes. Okay, go ahead. This court should reserve, reverse the decision of the district court and remand the case for further proceedings because Cormier's complaint satisfies the plausibility and fair notice standard articulated in Bell Atlantic v. Twombly and Ashcroft v. Iqbal. And if there's any doubt about this plausibility fair notice standard, Starr v. Baca puts an end to it. In Starr, a former county jail inmate brought a section 1983 claim against the county sheriff for his deliberate indifference and the plaintiff there alleged that he was beaten by an inmate and later on by a county deputy while other deputies were watching. He also alleged that there are other similar incidents happened to other inmates. You know, let me help you a little on this one. I wrote Baca, so I know what it is. We sent you an order asking you to be prepared to discuss it, which means the other judges on the panel have read it. So let's talk about your case on the assumption that we pretty much know what's in the Baca case. Okay, so what's in the complaint here that's sufficient to get past a dismissal motion? Your Honor, Cormier alleged that he's African-American man who was employed by All-American Asphalt as a full-time employee as a level four apprentice. However, shortly after he completed the first project, he was only given on average 16 hours a week and around the same time another non-African-American man who was less qualified, a new hire, was actually given more than 40 hours a week. And two other African-American men employed by All-American were also denied the promised full-time employment, and one was forced to resign because of lack of hours. Counsel, what we're really talking about here, are we not, is the Czwierkiewicz standard. Is that correct? Yes, Your Honor. And didn't both Twombly and Iqbal in effect accept out Czwierkiewicz? They didn't say at the Supreme Court in response, did they? No, they did not. The Twombly Court actually quoted the language in Czwierkiewicz saying that a complaint can survive the 12 v. 6 if it details the event leading up to termination, provides dates, nationality, or ages, or any of the protective characteristics of people involved. That language was actually quoted by Twombly Court with approval, and later on by this court in Williams v. Boeing Company and Star v. Baca. So that is still the good law. And here is the problem, Your Honor, is that Twombly Court, in fact, is the only one in the United States that has a good law. Twombly Court has a good law, but Twombly Court's complaint has more factual allegations than that is required. And it's a pro se complaint, is it not? Yes, Your Honor. And how are we to construe pro se complaints? Liberally construed. So under those circumstances, it sounds like you've got kind of a slam-dunk case, doesn't it? Yes, Your Honor. Why would you lose? Your Honor, in addition to those factual allegations, also the foreman and lieman, all American, actually called Cormier the N-word. So that itself is also evidence to show discriminatory intent based on his will. This is the plausibility standard. Even if we did apply Twombly and Iqbal, doesn't it? Yes, Your Honor.  And Shorkwood survives the Twombly and Iqbal because it embodies the plausibility standard. And in addition, Cormier also provides the dates through a letter from the Department of Fair Housing and Employment, indicating that discrimination is between May 6, 2006 and December 1, 2006. So Cormier's complaint, when considered, all the factual allegations together, it is enough to survive the fair notice of the complaint. So in the centerpiece of your argument may be what Judge Smith has already touched on. The district judge said, well, if I thought Swierkiewicz was still good law, this complaint would survive. And he says, in fact, it would survive easily if Swierkiewicz were still good law. So you could convince the district judge, if you could convince the district judge that Swierkiewicz had been overruled, you would win in the district court. And I understand that Twombly recites Swierkiewicz, though I assume after Twombly it's still good law. Is there anything in Iqbal that should tell us that Swierkiewicz has been overruled? No, Your Honor. No, Your Honor. There's nothing in Iqbal that tells this Court that Swierkiewicz is overruled. All Iqbal says is that the plausibility standard articulated by Twombly Court applies to all civil cases. And it also says that the Court should, when considering the complaint, should take away all the conclusory allegations and just look at the factual allegations in evaluating the sufficiency of the complaint. So nothing has changed after Iqbal. So Swierkiewicz still stands. Okay. That's a lot of specificity in this complaint, isn't there? Yes, Your Honor. Yes, Your Honor. And also, Twombly also alleged that he's actually supervised by a less qualified new hire, a white man, because some other person at All-American had a problem working with African-American men. So considering all the factual allegations together, the complaint is plausible in its face. Okay. We've got your position. Let's hear from the other side. And you've got quite a bit of time to respond in case there is something to which you do wish to respond. Thank you, Your Honor. Thank you. You must love going against the student. May it please the Court, I'm Sean Larson on behalf of Appellee All-American Asphalt. And I may be the one person up here that does not agree this is a slam-dunk case or a slam-dunk complaint. And it's kind of like following a show of beautiful young children or something like that. I just look worse by comparison each time. Well, there are a couple of points to address, Your Honor. But let me begin by saying, reminding this Court that Mr. Cormier has had ample opportunity to bring his complaint into compliance with Federal Rules of Civil Procedure No. 8. He filed five different complaints. And over the course of three separate motions to dismiss, two different Federal judges each determined that the complaint was insufficient. Because? Because it didn't comply with the standards set forth in Federal Rules of Civil Procedure 8. Okay. So the district court was not focusing on Iqbal or on Twombly. He was, Your Honor. In fact, because the rule is set forth in Rule 8, a shortened plate statement. And what Twombly and Iqbal dictate are the prism through which you judge that. Right. The Twombly court specifically said the way that we have done this for the past half-century, the no set-of-facts standard in Connolly, we are retiring. That has been misinterpreted, misunderstood, and misapplied. Going forward in ruling on, in determining what satisfies Rule 8, you look at this new test, this plausibility standard. Plaintiff calls that a heightened standard. It's a heightened standard in the sense that it does require more from the plaintiff. And why, why is what Mr. Cormier pled implausible? Two reasons, Your Honor. Okay. Let me back up. The legal standard portion and then the factual standard. First of all, the question is, does it have to meet Swerkiewicz or does it meet Twombly-Iqbal? I think that it is a misreading of Twombly-Iqbal to say that Swerkiewicz sets forth an exception to the plausibility standard for employment discrimination. Do you believe that's a plausible reading of those cases? I mean, they specifically referred to Swerkiewicz and didn't say this is gone. No, I agree, but no court has ever held that that, not even this court in Bakke, not even this panel, said that Swerkiewicz exists as an exception to Twombly-Iqbal. You would probably like a precedent that would say that, wouldn't you? Well, as a matter of fact, but what happens is Swerkiewicz exists for two principles at the moment. Number one, that all cases are to be treated equally pursuant to Federal Rule Civil Procedure 8. And how do you judge that? Through this plausibility standard. Number two, what Swerkiewicz held, that it's still a good law and for which point it's been cited in Twombly and in other cases is that a plaintiff need not plead the McDonnell-Douglas standard. That's an evidentiary standard. We're not alleging that that is the case here. That's not the position. So with that, we go back to Twombly-Iqbal, the plausibility standard. To address your question, Judge Smith, why hasn't Mr. Cormier met that standard? What Mr. Cormier has given us is essentially the exact type of complaint that Twombly-Iqbal was meant to dismiss. You have, on the one hand, two incidents. One conversation, alleged conversation with an African-American male. A second conversation with another separate African-American male in which they say, well, yeah, I was denied hours, too, and I had to quit. A taken on their face, they don't tell us anything about the decision made. Well, that's not all that's in the complaint, of course. There's a lot more. Agreed. I'm going to take each one of those. We'll take a look at them individually, quickly, then collectively. Those two conversations tell us nothing about whether these people held the same jobs, whether they were even full-time employees, whether they were subject to the dispatch by the Shannon Garcia, the only actor in All-American Asphalt who is alleged to have conducted one of these discriminatory acts. It tells us nothing other than these two guys told me this. What about the liberal pleading rules that apply to pro se litigants? Agreed. And admittedly, this Court has said that liberal pleading standards do apply to pro se plaintiffs. However, that liberality is not enough to abrogate the plain and simple statements required in Federal Civil Procedure 8. You give them some liberality, absolutely, but they are not, pro se plaintiffs, are not governed by a separate set of rules. It is the same set of rules that all litigants follow with some liberality. And I would argue that in this case. What does that mean, though, in the real world? How do you marry those two? It's a difficult position to put the district court in, obviously, Your Honor. But I think that here the district court meant that by giving this plaintiff several opportunities to amend his complaint. And in fact, Judge Larson, in ruling on the second motion to dismiss, gave a very explicit order about what he wanted to see. And in the oral argument said to him, these are the type of allegations you need to put in this complaint if it's going to pass muster under Federal rule 8. Plaintiff had several opportunities to do so, didn't do so, and the only conclusion to be drawn is that he can't do so. I'm giving him one more bite at the apple. If 5 isn't enough, I don't know at what point there is. There's no rule that says you get up to 8 complaints. But I would argue that 5 and two different Federal judges is enough. Back to your point about why this is not sufficient enough. So we talked about our two conversations with African American males. No facts at all about who they are, why they're there, what time. I mean, anything. These could be members of the HR personnel, for all we know. All American has several hundred employees. There's no fact that they even held the same job. The other is a conversation with a Mexican American employee who said to him, hey, I'm working 40 hours. That's it. Again, there's no conversation, no facts even alleged. Are there any specifications in the complaint as to the underlying qualifications of this Mexican employee? Level 2. Level 2 versus level 4. Correct. Not necessarily level 2 laborer versus level 4 laborer. Again, we don't know whether this Mexican American male even held the same job as Mr. Cormier. Well, one of Mr. Cormier's complaints is that even though he's level 4, which is higher than level 2, the jobs he's forced to perform, even when he gets work at all, is stuff below the level which he's actually qualified to work. He does clean up. He does sweep up. I mean, that's part of his complaint. He has alleged one incident. But remember, Your Honor, the facts here, the only allegation of discriminatory intent, the nexus of his claim is simply that All American didn't give him the hours he wanted. He's not complaining. He's not alleging that All American violated Title VII by giving him demeaning work or by giving him work that was not up to his level. The only discriminatory act alleged or the nexus of his complaint is that they didn't give him enough hours. Right. But the question is why. I mean, if it's a decent reason for not giving him the hours he wants, of course, American Asphalt couldn't do exactly as it did. And the question is, did they give him the diminished hours because he was African American? And one of the ways he can make his case is to say, well, someone who's not African American who otherwise looks like me got all the hours they want. Another way he can show it is they call him the N-word. Another way they can show it is they give him demeaning work. I mean, so all of this is evidence that goes to the question that he has to establish, and that is to say, why did they not give him the hours he wanted? Correct. And the standard that he has to meet is he has to plead enough facts for the court to make a reasonable inference that it is plausible on its face that all Americans' decision, alleged decision, to cut his hours, or more accurately, to not give him the number of hours he wanted, because by his own allegation when he asked, he got more hours. So it's just that he didn't get enough hours or as many hours as he wanted. What we have here are. . . He got more hours so he couldn't get unemployment. Well, that's his allegation. I mean, that's one of the conclusions that's to be stripped out from Per Twombly-Iqbal. The fact is that he asked for more hours. He got eight hours. He says, well, I feel like that's because I was African-American and because they wanted to cut me off from my unemployment. Again, that's not a conclusion. Assuming the unemployment was going to cost. . . I mean, that was going to come out of the company's hide if he's seeking unemployment. Arguably, Your Honor. But again. . . But again, that is one of the. . . That is the exact type of statement that Twombly-Iqbal says comes out of the complaint. So what we have here, even if you take these collectively together, they are not enough to show or to raise an inference that the decision to not give him as many hours as he wanted was based on his race. At best, what it shows is that there are other employees who have complaints. Let me ask you this. I think I know your answer, and I think you may have answered it, but I want to make it clear. Do you think Swerkiewicz has been overruled by the Supreme Court, or is Swerkiewicz still good law? I think Swerkiewicz is good law on two points, on the two points that I raised. One, to show for the point that all cases, employment law discrimination cases as much as securities acts cases, are to be governed by Federal Rule Civil Procedure 8. That's in line with Twombly. It's also good law that employment discrimination cases need not meet the McDonnell-Douglas standard at the pleading stage. Beyond that, I do not believe that it sets a lower standard for employment discrimination cases. No court has said that. And to answer the question that you asked earlier, Iqbal does, in fact, say that its plausibility standard applies to all civil cases across the board. And, of course, that's always been true even pre-Iqbal. I can't make a complaint that's premised upon little green men visiting me at night or the moon men being made of green cheese. I mean, that goes out the window, even though – even if I allege it in extraordinary detail, because it's clearly nonsense. So, I mean, the plausibility requirement has been there forever. Maybe Iqbal raises it a little bit. That's – and that's hard to know whether Iqbal himself is a sort of a ticket for this day and train only. But plausibility has been around for a long time. Yeah, but this Court has said on many occasions, in fact, in the Moss v. U.S. Secret Service case most recently, that Iqbal does, in fact, enact a major change, a major shift in the way that the pleadings stand. Well, we better not say that because the Supreme Court has no power to enact a new rule of civil procedure. It's not a new rule of civil procedure. What it is, again, is it changes the prism through which you measure the factual sufficiency of a litigant's complaint under Federal Rule 8. I'm not sure the Supreme Court agrees with you. I'm just a civil procedure teacher. That is not a slam dunk. And I should say for the record that Judge Fletcher has nothing whatsoever against little green men. Let it be clear. In case I'm hearing it on behalf of the little green men, I appreciate that, Your Honor. Unless this panel has any more questions, that's all for me.  Thank you. So, Ms. Lee, what do you do with the fact that there were two very capable Federal district judges who worked really quite hard with your client to try to help him craft a complaint that would meet the standards of the Federal rules of civil procedure? What more do they need to do? A few points, Your Honor. First, Cormier did not file five complaints. Three of them are identical because two of them he filed not following the proper procedure. So they were stricken. So there's only three. And then this report actually instructed Cormier with wrong instruction, told Cormier to plead McDonnell-Douglas, all four elements. Was that Judge Larson that did that? Yes. Yes. Okay. So Cormier actually was wrongfully instructed. And in addition, Cormier is a pro se plaintiff. And in light of the unsettling law after 12B and 8B, the plausibility standard, if the court finds that the complaint is not sufficient, at least it should allow Cormier to amend one more time. And Cormier believes that this complaint is sufficient to survive the 12B-6. And all American contends, also contends that Cormier did not plead that those African-American men were holding the same job or they were subject to the same dispatcher. However, at this pleading stage, this Court should draw all reasonable inference in favor of Cormier. And so Cormier is not required to plead all these facts at the pleading stage. As the short word, correct, instructed, that it's a pleading standard, not evidentiary standard. So Cormier does not need to plead all the evidence. You think all Americans have been put on notice? Yes, Your Honor. Absolutely. Absolutely. What do we do with the – I mean, I guess this is just kind of like a civil procedure question rather than an argument question, but I'll ask it anyway. I mean, he talks about what he's heard from this person, what he's heard from that  That's all hearsay. Does that matter? No, Your Honor, because this is not evidentiary standard. It's a pleading stage. This Court should draw all reasonable inference in favor of the Cormier. So the fact that it's hearsay may not be admissible at trial, but at pleading stage, this Court should take that as true and allow Cormier's complaint to survive the 12 v. 6 motion. Okay. Where are you going to law school? Hastings. You've done a fine job. Thank you. Congratulations. Thank you. Good. Thank both sides. Cormier v. All-American Asphalt has submitted her decision. Yes, I'd like to compliment you. You did a very nice job. And lest we leave you out, you did a very nice job, too. Indeed, we did. Okay. Cormier v. All-American Asphalt.
judges: Hug, Fletcher W. , Smith M.